# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| STEERE ENTERPRISES, INC., | ) | CASE NO. 5:23-cv-615 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | TEMPORARY RESTRAINING |
| | ) | ORDER |
| CIKAUTXO MEXICO, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

On March 22, 2023, plaintiff Steere Enterprises, Inc. ("plaintiff" or "Steere") filed a breach of contract action in federal court against defendant Cikautxo Mexico ("defendant" or "Cikautxo"). (Doc. No. 1 (Verified Complaint).) On the same day (March 22, 2023), plaintiff also filed a motion for an *ex parte* temporary restraining order and preliminary injunction compelling specific performance. (Doc. No. 2 (TRO Motion).)

On March 23, 2023, the Court conducted a telephonic conference in an effort to facilitate a short-term agreement that would obviate the need for a temporary restraining order. In advance of the conference, the Court instructed plaintiff's counsel to advise defendant of the conference and provide instructions for calling into the Court's bridge line. Plaintiff's counsel confirmed that it had forwarded to defendant the information for joining the phone conference, and further advised the Court that it had caused certified copies of the complaint and the TRO Motion to be served upon defendant. Additionally, plaintiff's counsel indicated that it had requested that defendant advise as to whether it had counsel but that defendant had not identified the existence of any legal

representative. Despite receiving information regarding the phone conference, no attorney or party representative for defendant elected to participate in the conference call.

Now, based on the information before the Court, including plaintiff's moving papers, and pursuant to Federal Rule of Civil Procedure 65(b), the Court finds that a limited temporary restraining order is warranted for the reasons set forth below. Moreover, because defendant elected not to participate in the proceedings to date, including the Court's March 23, 2023, phone conference, the Court finds that the temporary restraining order may be issued without prior notice to defendant.

## I.    BACKGROUND

According to the verified complaint, Steere is an Ohio corporation that designs and manufacturers component parts for customers in various industries. (Doc. No. 1 ¶¶ 2–3, 7.) Cikautxo is a Mexican entity that manufactures component parts and sells them to customers like Steer. (*Id*. ¶¶ 4–5, 8.)

On August 15, 2022, Steere issued a purchase order to Cikautxo ordering 200,000 hoses (the "Hoses") for delivery in approximately two-week intervals starting in January 2023 at a unit price of $8.73. (*Id*. ¶ 11; Doc. No. 1-1 (Purchase Order).) The Hoses are incorporated by Steere at its Tallmadage, Ohio plant into a product called the Charged Air Cooler that Steere sells to General Motors for use in the automobile company's Chevrolet Silverado pick-up truck. General Motors manufactures the Chevrolet Silverado at its plants in Flint, Michigan and Oshawa, Canada. (Doc. No. 1 ¶¶ 7, 12–13.)

The Purchase Order included, attached, and incorporated Steere's Standard Terms and Conditions of Purchase (the "Terms"). (Doc. No. 1 ¶ 20; Doc. No. 1-2 (Terms).) The Terms

provide, in relevant part, that:

> AGREEMENT OF PURCHASE. . . ."Seller's acknowledgement, commencement of performance to furnish the Products or Work, or any conduct by Seller which recognizes the existence of a contract pertaining to the subject matter hereof shall constitute acceptance by Seller of the Agreement and all of the Terms.

(Doc. No. 1-2 ¶ 1.) The Terms further provide that:

> CONTRACT PRICE AND PAYMENT. The contract price or unit prices stated in the purchase order represent the fixed, full amount payable by Buyer under the Agreement.

(*Id*. ¶ 12.) Additionally, the Terms are governed by the laws of Ohio, and any litigation arising out of the Terms must be commenced "in a State or Federal Court in the County of Summit, State of Ohio."[1] (*Id*. ¶ 19 (LAW AND JURISDICTION).)

General Motors demands Steere supply its Charged Air Cooler on a "just in time" basis—an automotive inventory control standard by which a buyer/manufacturer requires frequent shipments of product—because General Motors only has enough on hand to support less than a few days of production. (*Id*. ¶¶ 15–16.) By virtue of this standard, Steere is dependent on Cikautxo to supply the necessary Hoses in a timely fashion. (*Id*. ¶ 16.) "The slightest shortfall or delay in Cikautxo's supply of the Hoses negatively impacts Steere's manufacturing operations and threatens its supply of the Charged Air Cooler to General Motors, which will shut down in a matter of days if Cikautxo continues to cease delivering the Hoses." (*Id*.)

On March 9, 2023, after sending only three shipments totaling approximately 24,000 Hoses, Cikautxo informed Steere that it was unilaterally suspending all future shipments. (*Id*. ¶ 22; *see* Doc. No. 1-4 (Suspension Email).) To resume shipment, Cikautxo insisted that Steere pay a

---

[1] Further, by agreeing to the Terms, a seller "waives any objection which it may have now or hereafter to the laying of the venue of any such suit, action or proceeding and hereby irrevocably submits to the jurisdiction" of any appropriate federal or state court in Ohio. (*Id*. ¶ 19.)

surcharge for the Hoses already received over the contract price and agree to a 12% increase over the unit price for future shipments. (Doc. No. 1 ¶ 23; *see* Doc. No. 1-4.) At the time Cikautxo suspended shipments, Steere had only approximately 7,700 Hoses remaining in stock, which amounts to only a two week supply. (Doc. No. 1 ¶ 24.) Once these stores run out, Steere avers that it will be unable to manufacture any further Charged Air Coolers for General Motors, and that General Motors, in turn, will be unable to manufacture any additional Chevrolet Silverado pick-up trucks after March 27, 2023. (*Id.* ¶ 25.)

Steere avers that it is the "only producer" of the Charged Air Cooler that complies with General Motors' product specifications, and that it cannot obtain an alternative supply of Hoses that meet these specifications "soon enough to avoid supply interruptions." (*Id.* ¶ 18.) Accordingly, Steere insists that without an order from this Court compelling Cikautxo to resume its shipments of Hoses according to the Purchase Order and the Terms, "Steere's manufacturing of the Charged Air Cooler will have to shut down – and by extension General Motors' manufacture of the Chevy Silverado pick-up truck – on or around March 27, 2023." (*Id.* ¶ 25.) Steere claims that such a shutdown will cause it to suffer irreparable harm by way of injury to its customer relations with General Motors and goodwill, resulting in lost profits and damage to Steere's reputation. (*Id.* ¶ 32.) In its motion, Steere further claims that any shutdown by Steere will result in the layoffs of hundreds of employees at Steere and General Motors. (Doc. No. 2, at 2[2], 4; *see* Doc. No. 1 ¶ 13 (noting that General Motors' "Flint, Michigan plant alone employees over 700 employees").)

Steere represents that it has attempted to engage in good faith negotiations with Cikautxo

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

over the past two weeks to resolve the dispute but claims that Cikautxo has refused to ship any more Hoses until Steere agrees to its new, unilaterally proposed terms. (*Id.* ¶ 26.) In its amended Rule 65 verification, counsel indicates that, on March 21, 2023, he emailed a representative of Cikautxo and advised him that Steere intended to file a complaint and motion for a temporary restraining order and preliminary injunction and seek immediate injunctive relief. (Doc. No. 6 (Amended Rule 65 Verification).)

## II.   MOTION FOR TEMPORARY RESTRAINING ORDER

### A.  Rule 65(b) Standard

Rule 65 governs requests for injunctions and restraining orders. Plaintiff bears the burden of establishing entitlement to temporary injunctive relief under the rule. *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (citing cases). Preliminary injunctive relief is "an extraordinary remedy which should be granted only if the movant carries [the] burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington–Fayette Urban Cty.*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). "[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion[.]" *Leary*, 228 F.3d at 739 (citations omitted). Ultimately, the decision to grant or deny preliminary injunctive relief rests within the discretion of the Court. *Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods*., 134 F.3d 749, 753 (6th Cir. 1998) (citation omitted).

Consideration of whether to grant a preliminary injunction is governed by four factors. First, the Court must determine "whether the plaintiff has established a substantial likelihood or probability of success on the merits" of his claim. *Winnett v. Caterpillar, Inc*., 609 F.3d 404, 408

(6th Cir. 2010) (quotation marks and citation omitted). Second, the Court will determine "whether the [plaintiff] would suffer irreparable injury" if a preliminary injunction did not issue. *NACCO Materials Handling Grp. v. Toyota Materials Handling USA, Inc.*, 246 F. App'x 929, 935 (6th Cir. 2007) (citation omitted). Third, the Court must determine "whether the issuance of a preliminary injunction would cause substantial harm to others[.]" *Leary*, 228 F.3d at 739 (quotation marks and citations omitted). Finally, the Court must consider "whether the public interest would be served" if the Court were to grant the requested injunction. *Overstreet*, 305 F.3d at 573 (citations omitted). The four factors are not prerequisites, but are interrelated considerations that must be balanced against each other. *Leary*, 228 F.3d at 736 (citations omitted). The first factor—the likelihood of success—is, however, the predominant concern. "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. State AFL–CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)).

The standard for granting a temporary restraining order under Rule 65 is "logically the same as for a preliminary injunction with emphasis, however, on irreparable harm[.]" *Reid v. Hood*, No. 1:10 CV 2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Motor Vehicle Bd. of Cal. v. Fox*, 434 U.S. 1345, 1347 n. 2, 98 S. Ct. 359, 54 L. Ed. 2d 439 (1977)). "[T]he purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co*., 78 F.3d 219, 226 (6th Cir. 1996). "If the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined, then there is cause to preserve the status quo." *Reid*, 2011 WL 251437, at *2 (citing *Univ. of Texas v.*

6

*Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)).

### B.  Analysis of the Relevant Factors

With respect to the first factor, the Court finds that plaintiff is likely to succeed on its breach of contract claim. To prevail on a breach of contract claim under Ohio law, a plaintiff must show that: (1) the parties entered into a contract; (2) a party breached the contract; and (3) the suing party had substantially performed its duties under the contract at the time of the other party's breach. *Garofalo v. Chicago Title Ins. Co.*, 661 N.E.2d 218, 226 (Ohio App. Ct. 1995) (citing, among authority, *Nat'l City Bank of Cleveland v. Erskine & Sons*, 110 N.E.2d 598 (Ohio 1953)).

At this stage in the proceedings, plaintiff has established the existence of a contract as evidenced by the Purchase Order and the Terms, which defendant specifically accepted and agreed to be bound by partially performing thereunder. (Doc. No. 1-2 ¶ 1; *see* Doc. No. 1-1.) This contract clearly provides that the price set forth in the Purchase Order is the "fixed, full amount payable[.]" (Doc. No. 1-2 ¶ 12.) Plaintiff has also alleged facts, supported by documentation, that demonstrates that defendant breached the contract by refusing to ship the Hoses unless plaintiff agreed to pay an amount that was more than the $8.73 price per unit set forth in the Purchase Order. (Doc. No. 1-1, at 1; Doc. No. 1-4; *see* Doc. No. 1 ¶¶ 22–24, 31.) Finally, plaintiff has alleged that it has "fully and satisfactorily performed all of its obligations" according to the contract. (Doc. No. 1 ¶ 30.) Because plaintiff has demonstrated the likelihood that it will prevail on its breach of contract claim, this first factor weighs in favor of granting temporary injunctive relief.

The second factor—the existence of irreparable harm—is satisfied when a plaintiff shows that it "will suffer actual and imminent harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006) (quotation marks and

citations omitted). "[I] is well settled that a plaintiff's harm is not irreparable if it is fully compensable by money damages." *TRW Auto. U.S. L.L.C. v. Webco Indus., Inc*., No. 9-cv-10188, 2009 WL 10680779, at *3 (E.D. Mich. Jan. 16, 2009) (citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992)). It is equally true, however, that "an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate." *Id*. (citing *Basicomputer*, 973 F.2d at 511–12). "The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." *Basicomputer*, 973 F.2d at 512; *see also Mich. Rest. & Lodging Ass'n v. Gordon*, 504 F. Supp. 3d 717, 722 (W.D. Mich. 2020) ("'impending loss or financial ruin' of a business constitutes irreparable injury") (quoting *Performance Unlimited, Inc. v. Questar Publ'g Inc*., 52 F.3d 1373, 1382 (6th Cir. 1995)).

The verified complaint provides that Steere is the only manufacturer of the Charged Air Cooler that meets General Motors' product specifications (Doc. No. 1 ¶ 18), that it has only a two week supply of Hoses at its facility (*id*. ¶ 24), and that without resumed shipments by Cikautxo, Steere's manufacture of the Charged Air Cooler will have to shut down and, by extension, General Motors' manufacture of the Chevrolet Silverado pick-up trucks will cease on March 27, 2023. (*Id*. ¶ 25.) According to Steere, these shutdowns "would subject Steere to extensive penalties and the immediate loss of its reputation and good standing." (*Id*. ¶ 17.) The Court finds that Steere has shown that it will suffer irreparable harm if Cikautxo fails to resume delivery of the Hoses in accordance with the Purchase Order and Terms. *See, e.g., TRW*, 2009 WL 10680779, at *3 (finding temporary restraining order appropriate where failure to enforce terms of shipping agreement would result in loss of goodwill to plaintiff). The irreparable harm Steere will suffer if the Court

8

does not temporarily enforce the parties' agreement is compelling evidence that a temporary restraining order is appropriate.

As to the final two factors that guide the Court's analysis, the Court finds no evidence that the issuance of a temporary restraining order will cause substantial harm to Cikautxo, as Steere is only seeking to compel Cikautxo to continue to perform in accordance with the terms and conditions in the parties' agreement. Likewise, the Court finds that maintaining the status quo until this contract dispute is resolved will serve the public interest by ensuring the integrity of contractual arrangements between private parties and preserving jobs that may be lost should shutdowns at Steere and/or General Motors occur.

Ultimately, the Court finds that the balance of equities favors preserving the status quo for the immediate future. The Court will hold a hearing on plaintiff's motion for a preliminary injunction in accordance with Rule 65(a). No security pursuant to Rule 65(c) need be posted by Steere because Steere is not requesting any performance by Cikautxo other than what is set forth in the parties' contractual agreement.

### III.  CONCLUSION

For the foregoing reasons, plaintiff's motion for a temporary restraining order is GRANTED as follows:

> Defendant is temporarily enjoined and restrained from suspending shipments under the Purchase Order (Doc. No. 1-1; *see* Doc. No. 1-2). Defendant must resume shipment on the payment terms set forth in the Purchase Order, effective immediately, and must arrange and pay for expedited shipment for Hoses that were not delivered by the agreed upon delivery dates or that are at risk of missing upcoming delivery dates as set out in the Purchase Order.

> Defendant may appear and move to dissolve or modify this Order as permitted by and in compliance with the Federal Rules of Civil Procedure and the Northern District of Ohio Local Rules.

This Temporary Restraining Order, issued without prior notice, is entered at 10:00 a.m. on March 24, 2023, and shall remain in effect for a period of fourteen (14) days, unless before that time, the Court, for good cause, extends it for a like period in accordance with Rule 65(b). Plaintiff is directed to immediately serve defendant with a copy of this Order. Defendant's response to the motion for a preliminary injunction must be filed by April 3, 2023.

Plaintiff is not required to post any bond.

A hearing on plaintiff's motion for a preliminary injunction is set for April 6, 2023, at 8:30 a.m., and will be conducted via video conference.

**IT IS SO ORDERED**.


Dated: March 24, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

10