**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| STEERE ENTERPRISES, INC. | CASE NO. 5:23-cv-00615-SL |
| Plaintiff, | |
| v. | |
| CIKAUTXO MEXICO | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| Defendant. | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................**Error! Bookmark not defined.**

I.   ISSUES PRESENTED ................................................................................................ 1

II.  SUMMARY OF ARGUMENT................................................................................... 1

III. BACKGROUND ........................................................................................................ 2

IV.  ARGUMENT.............................................................................................................. 2

    A.   The Lack Of Service Does Not Warrant Dismissal. ........................................ 2
    B.   This Court Has Personal Jurisdiction Over Cikautxo. ..................................... 4
        1.   The Forum Selection Clause In The Terms Is Valid. .......................... 4
        2.   Even Without The Forum-Selection Clause, This Court Has
            Personal Jurisdiction Over Cikautxo.................................................... 7
    C.   Steere Has Stated A Claim. ............................................................................ 11
        1.   Steere Is Entitled To Specific Performance. ...................................... 11
         2.   The Declaratory Judgment Claim Is Not Duplicative........................ 12

V.   CONCLUSION......................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Almetals, Inc. v. Wickeder Westfalenstahl, GMBH*,
  No. 08-10109, 2008 WL 624067 (E.D. Mich. Mar. 6, 2008).................................................. 3

*Amelkin v. McClure*,
  1996 WL 8112 (6th Cir. 1996) .............................................................................................. 3

*Atl. Tool & Die Co. v. Klein Unformtechnik GmbH*,
  2008 WL 11480273 ............................................................................................................... 9

*Borgwarner PDS (Anderson), L.L.C. v. Indus. Molding Corp.*,
  No. 20-10607, 2020 WL 1169405 (E.D. Mich. Mar. 11, 2020)......................................... 4, 5

*Buflod v. Von Wilhendorf, LLC*,
  2007-Ohio-347 ....................................................................................................................... 9

*Byler v. Air Methods Corp.*,
  823 F. App'x 356 (6th Cir. 2020) ................................................................................... 13, 14

*Cajunland Pizza, LLC v. Marco's Franchising, LLC*,
  513 F. Supp. 3d 801 (N.D. Ohio 2021) ................................................................................. 4

*Calphalon Corp. v. Rowlette*,
  228 F.3d 718 (6th Cir. 2000) ................................................................................................. 9

*Com. Metal Forming v. Utilities Optimization Grp., LLC*,
  No. 4:11CV228, 2011 WL 5023265 (N.D. Ohio Oct. 19, 2011)........................................ 10

*CompuServe, Inc. v. Patterson*,
  89 F.3d 1257 (6th Cir. 1996) ................................................................................................. 8

*Discount Drug Mart, Inc. v. Devos, Ltd.*,
  No. 1:12 CV 00386, 2013 WL 5820044 (N.D. Ohio Oct. 29, 2013).................................... 6

*Fluidtech, Inc. v. Gemu Valves, Inc.*,
  475 F. Supp. 2d 762 (E.D. Mich 2006) ................................................................................. 5

*Fryburg Excavating & Trucking, LLC v. Hudco Leasing, LLC*,
  No. 5:19-CV-01680, 2020 WL 1930117 (N.D. Ohio Apr. 21, 2020).......................... 7, 8, 9

*Grigor v. Starmark Hosp. Grp. LLC*,
  No. 2:10-CV-20, 2010 WL 2403137 (S.D. Ohio June 10, 2010)......................................... 9

*Int'l Techs. Consultants, Inc. v. Euroglas S.A.*,
  107 F.3d 386 (6th Cir. 1997)............................................................................................... 10

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
  106 F.3d 147 (6th Cir. 1997)................................................................................................. 9

*McMunigal v. Bloch*,
    No. 1:09CV01674, 2010 WL 2106186 (N.D. Ohio May 25, 2010) ...................................... 9

*Mgm't Recruiters Intern., Inc. v. Corbin*,
    2013 WL 2151632 (N.D. Ohio May 16, 2013) ................................................................... 5

*Midmark Corp. v. Janak Healthcare Priv. Ltd.*,
    No. 3:14-CV-088, 2014 WL 1513009 (S.D. Ohio Apr. 16, 2014) ................................... 3, 4

*Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prod., Inc.*,
    No. 5:15-CV-1310, 2016 WL 705261 (N.D. Ohio Feb. 23, 2016) .................................. 5, 6

*Moses v. Business Card Exp., Inc.*,
    929 F.2d 1131 ..................................................................................................................... 5

*Newpage Corp. v. Mayfield Creek Forestry Consultants, LLC*,
    No. 3:14-CV-386, 2014 WL 7366201 (S.D. Ohio Dec. 24, 2014) ...................................... 6

*Sashti, Inc. v. Glunt Industries, Inc*.
    140 F. Supp. 2d 813 (N.D. Ohio 2001) ............................................................................ 12

*Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*,
    676 F.2d 309 (8th Cir. 1982) .............................................................................................. 9

*TRW Auto. U.S. LLC v. Webco Indus., Inc.*,
    No. 09-CV-10188, 2009 WL 10680779 (E.D. Mich. Jan. 16, 2009) ................................ 12

*Vasu v. Combi Packaging Sys. LLC*,
    No. 5:18-cv-1889, 2020 WL 2733756 (N.D. Ohio May 25, 2020) ................................... 12

Mirroring its opposition to the Motion for Preliminary Injunction (the "PI Motion") filed by Plaintiff Steere Enterprises, Inc. ("Steere"), Defendant Cikautxo Mexico ("Cikautxo") goes further than seeking to avoid injunctive relief. It argues that the same reasons for denying an injunction also support dismissal. But Cikautxo is wrong. For the reasons set forth below and in Steere's Reply in Support of the PI Motion (ECF 23) (the "PI Reply"), this Court should deny Cikautxo's Motion to Dismiss (the "MTD").

I. **ISSUES PRESENTED**

    1.    Does the lack of service warrant dismissal?

    2.    Can this Court exercise personal jurisdiction over Cikautxo?

    3.    Is Steere entitled to specific performance?

    4.    Has Steere stated a claim for declaratory judgment?

II. **SUMMARY OF ARGUMENT**

*First*, Steere has not failed to serve Cikautxo. Rather, it still has nearly two months before the service deadline. Moreover, as opposed to ignoring service, Steere has been diligently pursuing it under the Hague Convention because Cikautxo refused to waive service. Thus, dismissal for failure to serve is improper.

*Second*, this Court has personal jurisdiction over Cikautxo. Cikautxo consented to jurisdiction in Ohio as part of the Terms that have governed the parties' relationship over the last five years. Even without the consent, however, Cikautxo has minimum contacts with Ohio that satisfy the requirements of both the Ohio long-arm statute and due process.

*Third*, Steere's inability to cover should Cikautxo discontinue shipment and the irreparable harm it faces are sufficient to warrant specific performance of the contract. Dismissal of Steere's request for specific performance is not proper.

1

*Fourth*, because Steere's declaratory judgment claim is forward-looking, it is not duplicative and does not warrant dismissal.

## III. BACKGROUND

The background relevant to the Court's consideration is set forth in Steere's Verified Complaint (ECF 1) and on pages 2 through 7 of the PI Reply (ECF 23). For brevity, Steere incorporates those background facts for purposes of this opposition but does not restate them. *PI Reply attached for ease of reference as MTD Opp. Exhibit 1.*

Similarly, Cikautxo offers the same mischaracterization and misstatements of fact that it did in its opposition to the PI Motion. Steere already addressed those misstatements in the PI Reply and does not re-address them here. Steere's silence as to those misstatements in this opposition should not be construed as any type of acquiescence to the truth of the statements.

## IV. ARGUMENT

### A. The Lack Of Service Does Not Warrant Dismissal.

In the MTD, Cikautxo argues that the Court should dismiss this action because Steere has not properly served it under the Hague Convention. (MTD (ECF 17) 5-7.) This argument fails for two reasons.

*First*, the deadline for service has not passed. Pursuant to Federal Rule of Civil Procedure 4(m), a domestic defendant must be served within 90 days of the filing of the complaint. And that deadline does not even apply to service in a foreign country. Fed. R. Civ. P. 4(m). Steere filed its Complaint on March 22, 2023, approximately 40 days ago. Even if Cikautxo were a domestic defendant, Steere would still have nearly two months left to serve. And Cikautxo is a foreign defendant whom plaintiffs are permitted even longer to serve. Thus, there cannot be a ruling that Steere has failed to serve Cikautxo because it still has plenty of time left to do so.

2

*Second*, as set forth in the PI Reply, far from failing to serve, Steere is actively moving forward with service under the Hague Convention. (Ex. 1: PI Reply at p.6-7.) Because of the slow progress of service under the Hague Convention, however, that process is not yet complete.

To the extent the parties find themselves in the unusual circumstances of litigating prior to service on the **defendant**, the Federal Rules of Civil Procedure have provided for just such circumstances. As set forth in the PI Reply, Federal Rule of Civil Procedure 65(a) states that a "court may issue a preliminary injunction only on notice to the adverse party." The Rule requires notice, not service. This notice requirement implies "a hearing in which the defendant is given a fair opportunity to oppose the application and to prepare for such opposition." *Amelkin v. McClure*, 1996 WL 8112, at *5 (6th Cir. 1996).

In this case, Cikautxo has actual notice of the action against it, having received (and acknowledged receipt of) copies of all docket entries, made an appearance, and filed court documents both opposing the entry of a preliminary injunction and seeking to dismiss Steere's Complaint. There is no doubt that Cikautxo has notice and a fair opportunity to defend itself.

Courts in the Sixth Circuit have faced this precise situation and issued preliminary injunctions. *See Midmark Corp. v. Janak Healthcare Priv. Ltd.*, No. 3:14-CV-088, 2014 WL 1513009, at *1-2 (S.D. Ohio Apr. 16, 2014); *Almetals, Inc. v. Wickeder Westfalenstahl, GMBH*, No. 08-10109, 2008 WL 624067, at *4 (E.D. Mich. Mar. 6, 2008). The rationale employed is particularly instructive:

> Ultimately, Defendant wants to have it both ways. It has fully participated in all proceedings to this point and therefore clearly has notice of this action, yet now maintains that the Court cannot extend the TRO due to lack of service. And Defendant refuses to waive service despite its knowledge that service may take three months or more. If Defendant's position were correct, Rule 65 would be inoperable against foreign Defendants. A TRO could not stand for more than 20 days, and a preliminary injunction could not issue until service was perfected under the Hague Convention, a process that can take months. The Court does not

3

> believe this result was envisioned or intended by the Federal Rules of Civil Procedure.

*Midmark Corp.*, 2014 WL 1513009, at *2 (citing *Almetals, Inc.*, 2008 WL 624067, at *4). Thus, even though Cikautxo has not yet received formal service, it has undisputedly received notice, and this Court can proceed. Failure to effectuate service yet is not a reason to dismiss.

    **B.**    **This Court Has Personal Jurisdiction Over Cikautxo.**

          **1.**    **The Forum Selection Clause In The Terms Is Valid.**

The Terms,[1] under which Cikautxo has operated since 2018, contain the following provision: "Buyer may commence, any legal suit . . . arising out of or relating to the Agreement in a State or Federal Court in the County of Summit, State of Ohio. Seller waives any objection . . . irrevocably submits to the jurisdiction of any such court." That provision has never changed, and Cikautxo has never objected to it. (Ex.1: PI Reply at Ex.A, ¶¶ 6, 18.) That provision unequivocally submits Cikautxo to the personal jurisdiction of this Court. *See, e.g., Borgwarner PDS (Anderson), L.L.C. v. Indus. Molding Corp.*, No. 20-10607, 2020 WL 1169405, at *1 (E.D. Mich. Mar. 11, 2020) ("The Court appears to have personal jurisdiction over IMC based on the contracts at issue in this case, as IMC negotiated them with BorgWarner (a company whose headquarters are in Michigan) and because the contracts provide that 'the forum and venue for any legal action or proceeding concerning this Purchase Order will lie in the appropriate federal or state courts in the State of Michigan and [IMC] specifically waives any and all objections to such jurisdiction and venue.'");[2] *Cajunland Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801, 805 (N.D. Ohio 2021) (under Ohio law, contractual choice of law provisions are

---

[1] Cikautxo asserts that it never entered into a contract with Steere. (MTD (ECF 17) 8.) As set forth in the PI Reply, that assertion is false. (PI Reply 10-15.) In the interest of brevity, Steere does not repeat its argument here.

[2] Like here, the consent jurisdiction term of the Borgwarner purchase order was included in a separate terms and conditions document incorporated into its purchase order. *See Exhibit 2 to the Complaint in the Borgwarner case (retrieved from PACER) attached at **MTD Opp. Exhibit 2**.*

4

valid and enforceable); *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1136 (6th Cir. 1991(forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances); *Fluidtech, Inc. v. Gemu Valves, Inc.*, 475 F. Supp. 2d 762, 767 (E.D. Mich 2006)(a party faces a "heavy burden of proof" to set aside a forum selection clause on grounds of inconvenience).

This Court has addressed and rejected arguments like those Cikautxo presents. In *Mgm't Recruiters Intern., Inc. v. Corbin*, 2013 WL 2151632 (N.D. Ohio May 16, 2013), the defendant moved to dismiss, claiming that this Court lacked personal jurisdiction over him because the forum selection clause was incomplete and contrary to public policy. The Court found otherwise:

> Corbin's arguments against enforcing the Contract Staffing Agreement's Ohio forum selection clause are unpersuasive. Corbin does not say he was defrauded. And failure to read is no defense, nor is the failure of the drafter to explain the language where it is unambiguous. Nor can Corbin defeat the forum selection clause by pointing to "lack of contacts . . . the location of witnesses and records . . . and the financial burden," because it may be assumed that the plaintiff received under the contract consideration for these things.

*Id*. at p.8.

Trying to escape this clear and unequivocal reality, however, Cikautxo argues that the Terms were not properly incorporated by reference into the contract. (MTD (ECF 17) 7-9.) "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Morgantown Mach. & Hydraulics of Ohio, Inc. v. Am. Piping Prod., Inc.*, No. 5:15-CV-1310, 2016 WL 705261, at *5 (N.D. Ohio Feb. 23, 2016) (internal citations omitted). With respect to the first two requirements, "terms and conditions located on a company's website [are] incorporated into a contract where they were clearly referred to and could be easily located by the challenging party, especially where that party is a commercial entity." *Id.* (internal citations omitted).

5

In this case, the Terms are referenced directly on the fact of the purchase order, and the purchase order contains a website link that takes a seller directly to the Terms. (PI Reply at Ex. A at Exs. 1, 3-8, 11 to Ex. A.) Thus, the Terms are clearly referenced and ascertainable.

The only remaining requirement is that the Terms do not result in "surprise or hardship." Cikautxo invokes *Discount Drug Mart, Inc. v. Devos, Ltd.*, No. 1:12 CV 00386, 2013 WL 5820044, *2 (N.D. Ohio Oct. 29, 2013), to argue that Steere's purported ability to unilaterally modify the Terms constitutes "surprise or hardship." (MTD (ECF 17) 8-9.) This invocation, however, is misplaced. In *Discount Drug Mart*, the court also relied on the fact that, not only did the plaintiff retain the right to change the terms, it did so several times during the pendency of the relationship between the parties. *Morgantown Mach.*, 2016 WL 705261, at *5 n.10; *Newpage Corp. v. Mayfield Creek Forestry Consultants, LLC*, No. 3:14-CV-386, 2014 WL 7366201, at *4 (S.D. Ohio Dec. 24, 2014). Moreover, the court relied on the fact that the website did not appear to contain the terms at issue at the time the contract was executed. *Newpage Corp.*, 2014 WL 7366201, at *4.

In contrast, in both *Morgantown* and *Newpage*, where terms did not change throughout the course of the parties' relationship, the courts held there was no "surprise or hardship." *Morgantown Mach.*, 2016 WL 705261, at *5 n.10; *Newpage Corp. v. Mayfield Creek Forestry Consultants, LLC*, No. 3:14-CV-386, 2014 WL 7366201, at *4.

Here, the Terms closely resemble those in *Morgantown* and *Newpage*. Steere's Terms have remained the same throughout the parties' six-year relationship. (Ex. 1: PI Reply at Ex.A, ¶6 and Ex.2 thereto.) All the provisions implicated in this action have been present since that time. Cikautxo does not dispute this fact. While it attempts to argue that, in fact, Steere has altered the purchase orders by adding release dates and asking for relief not provided by the

6

contract, even if true, those actions would constitute breaches of the purchase orders <u>and not changes to the actual Terms</u>. Indeed, Cikautxo does not argue that Steere has actually changed any of the Terms.[3] Thus, Cikautxo faces no "surprise or hardship," and the Terms were properly incorporated into the contract between the parties. Thus, the Terms and its clause in which Citautxo agreed to submit to the jurisdiction of the Ohio courts are valid and enforceable, and this Court should not dismiss for lack of personal jurisdiction.

### 2. Even Without The Forum-Selection Clause, This Court Has Personal Jurisdiction Over Cikautxo.

To establish personal jurisdiction under the Ohio long-arm statute, a defendant must be "(1) [t]ransacting any business in this state;" or "(2) [c]ontracting to supply services or goods in this state." Ohio Rev. Code 2307.382(A)(1)-(2).[4] A plaintiff's burden to establish personal jurisdiction is "relatively slight," requiring that he or she "make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Fryburg Excavating & Trucking, LLC v. Hudco Leasing, LLC*, No. 5:19-CV-01680, 2020 WL 1930117, at *2 (N.D. Ohio Apr. 21, 2020) (internal citations omitted). Transacting business means:

> [T]o prosecute negotiations; to carry on business; to have dealings . . . . The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word "contract" and may involve business negotiations which have been either wholly or partly brought to a conclusion . . . "

*Id*. at *3-4 (internal citations omitted).

While Cikautxo engages in an extensive jurisdictional analysis, the analysis is actually much simpler. "This broad interpretation of the 'transacting any business' subsection of Ohio's

---

[3] Equally as important, as set forth in the PI Reply, Steere regularly updated purchase orders pursuant to the parties' accepted five-year course of conduct. As such, it has never sought any relief the contract did not provide or of which Cikautxo was unaware. (Ex. 1: PI Reply at p.13-14, 19.)

[4] The other bases for personal jurisdiction under the statute are not at issue here.

7

long-arm statute led the Sixth Circuit Court of Appeals to conclude that 'the Ohio 'transacting any business' standard is coextensive with the purposeful availment prong of constitutional analysis.'" *Id.*, at *4 (internal citations omitted) ("Ohio's 'transacting any business' standard is coextensive with the Due Process Clause in that it requires both that the defendant have purposefully availed itself of the privilege of acting in Ohio or have caused a consequence in Ohio and that the act or consequence in Ohio be sufficiently substantial to support jurisdiction"). Thus, this Court need not undertake two separate analyses.

The critical question is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Physical presence in the forum state, however, is not required to find purposeful availment. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996). What is required are actions by a defendant that are purposefully directed towards individuals in the forum state. *Id.* at 1264 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)); *see also Fryburg*, 2020 WL 1930117, at *6 (finding personal jurisdiction where the defendant, through telephone calls, email, and text messages, communicated with the plaintiff knowing that the plaintiff was located in the forum and shipped products to the forum). A contract between the parties is not required. *Fryburg*, 2020 WL 1930117, at *6. In addition, the issue of which party initiated the business is not dispositive. *Id.*, at *8 ("[r]egardless of how the business relationship was initiated, [defendant] certainly would not have shipped machinery to Ohio without intentionally choosing to engage in business dealings with [plaintiff]").

This case is factually analogous to the *Fryberg* case. Cikatuxo engaged in negotiations with Steere in Ohio via emails and phone calls. Cikautxo shipped its products directly to Steere

8

in Ohio.[5] Arguably, Cikautxo has more connection to Ohio than the defendant in *Fryberg* did. As set forth above, Cikautxo entered into a contract containing a provision submitting to the jurisdiction of the Ohio courts. Moreover, according to his LinkedIn profile, Ruben Mateos, who Cikautxo states is the individual entitled to contract on its behalf, resides not in Mexico, but in the United States.[6] Thus, Citautxo has more than enough minimum contacts to be subject to the jurisdiction of the Ohio courts.

The cases upon which Cikautxo relies are distinguishable. They fall into a few different categories. Some involve the analysis of an individual's contacts with the forum, which are markedly different than a sophisticated business entity's contacts. *Grigor v. Starmark Hosp. Grp. LLC*, No. 2:10-CV-20, 2010 WL 2403137, at *3 (S.D. Ohio June 10, 2010); *McMunigal v. Bloch*, No. 1:09CV01674, 2010 WL 2106186 (N.D. Ohio May 25, 2010); *Buflod v. Von Wilhendorf, LLC*, 2007-Ohio-347, ¶ 2. Some involve a single isolated contract as opposed to an ongoing five-year business relationship like Steere and Cikautxo have. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997); *Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 310 (8th Cir. 1982). Another involved only a single contract, and the plaintiff traveled to Germany, where the defendant was located, to pick up the shipment. *Atl. Tool & Die Co. v. Klein Unformtechnik GmbH*, 2008 WL 11480273, at *2. And *Calphalon*

---

[5] In the Declaration of Iñigo Laskurain attached in support of the MTD, Mr. Laskurain does not identify his position at Cikautxo and does not state he ever communicated with anyone at Steere. No communication between the parties (whether written or verbal) provided to the Court involved Mr. Laskurain. Thus, not surprisingly, his declaration is fraught with inconsistencies and omissions relating to the parties' five-year course of conduct and to the interactions pertaining to the 2023 Blanket Purchase Order and its updated versions. (PI Reply generally.) To the extent Mr. Laskurain's declaration contradicts the Terms, a court "does not weigh the controverting assertions of the party seeking dismissal," which "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Fryburg*, 2020 WL 1930117, at *3.

[6] See Ruben Mateos' LinkedIn profile available at https://www.linkedin.com/in/ruben-mateos-791318a/, attached as **MTD Opp. Exhibit 3**.

9

*Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000), involved a contract for services to be performed in another state. None of those circumstances are involved here.

Citautxo also attempts to narrow this Court's consideration by arguing that the Court can only consider the contacts created by this most recent purchase order, not the contact created by the parties' continuous, ongoing business relationship since 2018. This attempt is misguided. To that extent, the cases upon which Cikautxo relies are inapposite. In both cases, *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386 (6th Cir. 1997) and *Com. Metal Forming v. Utilities Optimization Grp., LLC,* No. 4:11CV228, 2011 WL 5023265 (N.D. Ohio Oct. 19, 2011), the prior contracts were unrelated to the contract at issue. That is not the case here. Steere and Cikautxo have been involved in a continuous relationship for over five years. All the purchase orders are similar, and the Terms governing them are identical and unchanged. The part Cikautxo sells Steere has not changed.

The agreement is not an "isolated transaction" but an "effort[] of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States." *Com. Metal Forming v. Utilities Optimization Grp., LLC*, 2011 WL 5023265, at *4. That effort to serve the Ohio market has amounted to over $5.6 million in business over five years involving over 600,000 parts delivered by Cikautxo to Steere into Summit County, Ohio during that multi-year time period.[7] (Ex. 1: PI Reply at Ex.A, ¶3.) Thus, consideration of the parties' entire relationship is warranted, and this Court, based on that consideration, has personal jurisdiction over Cikatuxo.

---

[7] $5.6 million divided by $8.70 per part equates to more than 600,000 hoses sold and delivered into Ohio by Cikautxo.

10

### C. Steere Has Stated A Claim.

#### 1. Steere Is Entitled To Specific Performance.

As an initial matter, Cikautxo does NOT argue that Steere has failed to state a claim for breach of contract. Rather, it argues that Steere is not entitled to the remedy it seeks. (MTD 19.) Thus, regardless of whether this Court agrees with Cikautxo with respect to specific performance, dismissal of the breach-of-contract claim is not proper.

In addition, Cikautxo is wrong about Steere's entitlement to specific performance. Under the Ohio Uniform Commercial Code ("UCC"), specific performance is appropriate "**where the goods are unique and in other proper circumstances**." Ohio Rev. Code § 1302.90 (**emphasis added**). And "inability to cover is strong evidence of 'other proper circumstances.'" *Id*. at Cmt. 2.

In this case, as set forth more fully in PI reply, Steere certainly lacks the ability to cover. Before a part can be installed in a vehicle, the component must undergo the extensive and lengthy approval process called production part approval process ("PPAP"). (PI Reply, Ex. A at ¶ 24.) In the case of the Cikautxo hoses Steere incorporates into the Charged Air Cooler it manufactures for General Motors, PPAP took over six months. (*Id*. at ¶ 25.) Thus, should Steere need to source those hoses from another source, it would need to go through PPAP for them, and the approval for that replacement hose would take multiples months. (*Id*. at ¶ 26.) It could not readily cover with alternative hoses obtained from other sources.

Cikautxo argues, however, that the "other circumstances" prong should not apply because Steere does not face irreparable harm. (MTD 19.) Again, this is not true. General Motors comprises about 40% of Steere's overall business. (PI Reply, Ex. A, at ¶ 4.) If General Motors were to experience a shutdown due to Steere's failure to deliver because of Cikautxo's refusal to deliver, the penalties and fees General Motors would assess against Steere would bankrupt

11

Steere. (*Id.* at ¶ 27.) Additionally, the loss of customer goodwill from General Motors and others cannot be quantified because those are lost future opportunities under the law of this Circuit.

Specifically, the prevailing law in this Circuit is *TRW Auto. U.S. LLC v. Webco Indus., Inc.*, No. 09-CV-10188, 2009 WL 10680779 (E.D. Mich. Jan. 16, 2009). In that case, the court faced a nearly identical situation and ruled that the plaintiff's harm was irreparable. The parties agreed to a requirements contract in which the defendant would supply automotive parts at an agreed price. *Id.*, at *2. The defendant abruptly stopped shipment, demanding a higher price. *Id.* In holding that the harm was irreparable, the court placed significance on the fact that the plaintiff would face shutdown within days and that the plaintiff would lose customer goodwill. *Id.*, at *3. Thus, *TRW* dictates that Steere does indeed face irreparable harm without a preliminary injunction.

Ironically, the case upon which Cikautxo relies supports the conclusion that Steere faces irreparable harm. In *Sashti, Inc. v. Glunt Industries, Inc.*, this Court found that irreparable harm will exist when a party is faced with loss of business opportunity and customer goodwill. 140 F. Supp. 2d 813, 817 (N.D. Ohio 2001). That is also the case here. Steere will not only lose customer goodwill and suffer reputational harm, but would also likely be forced into bankruptcy. Thus, the "other circumstances" justifying specific performance are present here, and the Court should not dismiss Steere's request for it.

### 2. The Declaratory Judgment Claim Is Not Duplicative.

Cikautxo also asks this Court to dismiss Steere's declaratory judgment count as duplicative. The case upon which Cikautxo relies, however, is inapposite. In that case, the plaintiff requested a declaration that the defendant owed an amount equal to the amount claimed owed in damages for breach. *Vasu v. Combi Packaging Sys. LLC*, No. 5:18-cv-1889, 2020 WL 2733756, *9 (N.D. Ohio May 25, 2020). Steere makes no such request.

12

Rather, to determine whether it should entertain a declaratory judgment claim, a court should consider:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020) (quoting *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984).

With respect to the first two factors, whether the declaratory action would settle the controversy and whether the action would serve a useful purpose, Cikautxo has made clear it seeks to get out of its contract with Steere. In addition to appearing and defending this action, it has also, since Steere filed the action, sent a letter attempting to cancel the contract. (Opp. to PI Motion (ECF 18) 15.) Steere has no way to know what the future holds even if it prevails in this action. The contract requires ongoing performance through 2023, and Cikautxo may again attempt to terminate or cancel. Then, the parties will find themselves back in this Court. Thus, a declaration will help to settle the controversy and serve a useful purpose.

Next, Steere is not using this claim as "procedural fencing." Like the plaintiffs in *Bylar* and as described above, even if Steere prevails, it faces a "looming uncertainty" regarding the future performance of the contract. *See Byler*, 823 F. App'x at 366. "It is in these types of situations, where there is a threat of ongoing harm, that declaratory relief is most appropriate."

13

*Id.* (citing *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004)). There is no indication Steere has filed its federal lawsuit as a means of preempting a suit by Cikautxo in another forum. *See id.* Thus, the third factor weighs against dismissal.

Turning to the fourth factor, it "weighs against federal court declaratory relief when there are parallel state-court proceedings involving similar or identical issues of state law." *Id.* at 367. None exist here.

Finally, turning to the fifth factor, Steere may wait to see if Cikautxo again attempts to cancel the contract and then combat the cancellation again. But it would then face even more loss of goodwill from its customers with another threat of shutdown and more scrambling to resolve the issues or cover. Thus, alternative methods of resolving this uncertainty are not better, and all five factors weight in favor of denying Cikatuxo's request to dismiss the declaratory claim.

## V. CONCLUSION

Steere has not failed to serve Cikautxo. Rather, Steere has been diligently pursuing it under the Hague Convention because Cikautxo refused to waive service. Moreover, this Court has personal jurisdiction over Cikautxo as it consented to jurisdiction in Ohio. Even without the consent, however, Cikautxo has minimum contacts with Ohio that satisfy the requirements of both the Ohio long-arm statute and due process. In addition, Steere's inability to cover should Cikautxo discontinue shipment and the irreparable harm it faces are sufficient to warrant specific performance of the contract. Dismissal of Steere's request for specific performance is not proper. Finally, because Steere's declaratory judgment claim is forward-looking, it is not duplicative and does not warrant dismissal. For these reasons, the Court should deny Cikautxo's Motion to Dismiss.

Dated: <u>May 1, 2023</u>                  Respectfully Submitted:

                                                      **BENESCH, FRIEDLANDER, COPLAN**

                **& ARONOFF LLP**

        */s/ H. Alan Rothenbuecher*
        H. Alan Rothenbuecher (0041883)
        200 Public Square, Suite 2300
        Cleveland, Ohio 44114-2378
        Telephone: 216.363.4500
        Facsimile: 216.363.4588
        Email:  har@beneschlaw.com

        *Counsel for Plaintiff, Steere Enterprises, Inc.*

## CERTIFICATE OF SERVICE

    I certify that, on May 1, 2023, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court via the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

                                                */s/ H. Alan Rothenbuecher*
                                                H. Alan Rothenbuecher (0041883)

22769347 v6